[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner filed a pro se petition for a writ of habeas corpus on May 19, 1999. The petition was amended on February 16, 2000, as well as on April 5, 2001. The Second Amended Petition alleges both ineffective assistance of trial counsel and of prior habeas counsel. Specifically, trial counsel is alleged to have been ineffective for allowing the petitioner to plead guilty to a charge of failure to appear in the first degree in violation of General Statutes § 53a-172 when the petitioner did not commit that crime. Second Am. Pet., at 2. Prior habeas counsel is alleged to have been "ineffective for asking the court to dismiss a habeas petition with prejudice when counsel should have asked that it be dismissed without prejudice, where an examination of the petitioner's mittimus indicates that he did in fact receive a consecutive sentence for failure to appear." (Emphasis in original.) Id. The respondent denies these claims and raises the affirmative defense of laches. Am. Ret., at 2.
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction has two components. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that the deficient performance prejudiced the defense. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." Henry v.Commissioner of Correction, 60 Conn. App. 313, 316-7, 759 A.2d 118 (2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864
(1984)). "Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal citations and quotations omitted.) Henry v. Commissioner of Correction, supra, 60 Conn. App. 317-8.See also Commissioner of Correction v. Rodriguez, 222 Conn. 469, 477,610 A.2d 631 (1992).
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea. See Hill v.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses he claims should have CT Page 3331 been introduced were likely to have been successful at trial." Copas v.Commissioner, 234 Conn. 139, 151, 662 A.2d 718 (1995).
"In Hill v. Lockhart, the court determined that the same two-part standard applies to claims arising from the plea negotiation process and that the same justifications for imposing the prejudice requirement inStrickland were relevant in the context of guilty pleas. Although the first half of the Strickland test remains the same for determining ineffective assistance of counsel at the plea negotiation stage, the court modified the prejudice standard. As in Strickland, the prejudice standard for plea negotiations is intended to determine whether, but for counsel's constitutionally deficient performance, the outcome of the plea process would have been different. The court went on to require that in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) Id., at 156.
"A reviewing court can find against the petitioner on whichever [Strickland prong] is easier. Valeriano v. Bronson, 209 Conn. 75, 85-6,546 A.2d 1380 (1988); Nardini v. Manson, 207 Conn. 118, 124, 540 A.2d 69
(1988); Magnotti v. Meachum, 22 Conn. App. 669, 674, 579 A.2d 553
(1990); Beasley v. Commissioner of Correction, [47 Conn. App. 253, 264,704 A.2d 807 (1997), cert. denied, 243 Conn. 967, 707 A.2d 1268 (1998)]."Petaway v. Commissioner of Correction, 49 Conn. App. 75, 76 n. 2,712 A.2d 992 (1998).
As the respondent has raised the special defense of laches, this Court will first address that defense. "The burden is on the party alleging laches to establish that defense. Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. The mere lapse of time does not constitute laches unless it results in prejudice to the defendant as where, for example, the defendant is led to change his position with respect to the matter in question." (Internal citations and quotations omitted.) Burrier v. Burrier, 59 Conn. App. 593, 596,758 A.2d 373 (2000). See also Unified School Dist. #1 v. Department ofEducation, 64 Conn. App. 273, 287, 780 A.2d 154, cert. denied,258 Conn. 910, ___ A.2d ___ (2001). "The principal element in applying the doctrine of laches is the resulting prejudice to a defendant, rather than the delay itself." Seymour Hsng. Auth. Tenants v. Housing Authority,18 Conn. App. 393, 405, 558 A.2d 1002 (1989).
The respondent claims to have "been prejudiced in his defense of this matter by virtue of the petitioner's inordinate delay in presenting his claim because transcripts of the court's canvass of the petitioner at the CT Page 3332 time his plea was entered are no longer available." Am. Ret., at 2. Additionally, the respondent also alleges prejudice arising from the fact that Attorney Washton, the attorney who represented the petitioner at the time of his failure to appear, has since deceased, affecting "the respondent's ability to counter self-serving testimony from the petitioner regarding his dealings with Attorney Washton." Resp. Br., at 8.
Attorney Washton did not represent the petitioner at the time he entered his guilty plea on the failure to appear charge. However, Attorney Ramon Canning, who represented the petitioner when he entered his guilty plea, was available and testified at the habeas corpus trial. This Court, as the "sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony," will assess and evaluate the petitioner's testimony after it is given. White v. Commissioner ofCorrection, 66 Conn. App. 847, 849, ___ A.2d ___ (2001). The respondent additionally has not shown that the unavailability of the plea transcript caused actual prejudice (e.g., a change in position in this matter or that the plea canvass entailed anything that might be outcome determinative). It bears noting that the petitioner is not alleging a constitutionally faulty plea canvass. Based on the foregoing, this Court concludes that the respondent has failed to show sufficient prejudice to substantiate the defense of laches.
The petitioner first claims ineffective assistance of trial counsel premised on counsel allowing the petitioner to plead guilty to a charge of failure to appear in the first degree in violation of General Statutes § 53a-172 when the petitioner did not commit that crime. In relevant part, General Statutes § 53a-172 states that "[a] person is guilty of failure to appear in the first degree when (1) while charged with the commission of a felony and while out on bail or released under other procedure of law, he willfully fails to appear when legally called according to the terms of his bail bond or promise to appear[.]" The petitioner argues that because he was incarcerated in Massachusetts at the time he was to appear for sentencing, he could not have willfully failed to appear. Am. Pet., at 1. The Court makes the following factual findings in order to resolve this claim.
The petitioner was arrested and charged with a multitude of offenses ranging from various degrees of larceny to burglary in the third degree, criminal mischief in the third degree and assault in the third degree. Resp. Ex. 1, at 1. On August 18, 1990, the petitioner entered a plea of guilty to one or more counts and the matter was continued for sentencing to October 18, 1990. Id. A pre-sentence investigation report was ordered in preparation for sentencing. The petitioner had posted bond and was not confined while awaiting sentencing. Id. Additionally, Attorney Washton CT Page 3333 represented the petitioner during these proceedings and at the scheduled sentencing. Id.; also see Tr. (11/1/2001), at 26.
Attorney Washton, who was privately retained by the petitioner, had negotiated a plea bargain with the prosecutor on the dockets in which the petitioner pleaded guilty to on August 18, 1990, that would result in a sentence of ten years, execution suspended after six years. Tr. (11/1/2001), at 27. During the night of October 16 into 17, the petitioner was arrested and subsequently incarcerated in Dedham, Massachusetts from October 17, 1990 to February 22, 1991. Pet'r. Ex. A. The petitioner failed to appear at the sentencing on October 18, 1990. Tr. (11/1/2001), at 27. The matter was continued to November 26, 1990, so that Attorney Washton could locate the petitioner. Id., at 57 and 74-5. Attorney Washton then withdrew from the case because the petitioner failed to pay him for his services. Id., at 28.
The petitioner was released by federal master from the custody of the Norfolk County House of Correction in Dedham, Massachusetts and surrendered to the custody of the state of Rhode Island on February 22, 1991. Pet'r. Ex. A. On June 6, 2001, the petitioner was extradited from Rhode Island to Connecticut. Tr. (11/1/2001), at 46. Public Defender Ramon Canning, who had been practicing law in Connecticut since 1970 and had been a public defender since 1974, was assigned to represent the petitioner upon his return to Connecticut on the still pending charges.Id., at 54-5. However, in addition to the original charges against the petitioner, the state had additionally charged the petitioner with one count of failure to appear stemming from the petitioner's absence at the November 26, 1990 sentencing hearing. Id., at 55.
The original plea agreement worked out by Attorney Washton had since been withdrawn by the state as a result of the failure to appear. Id., at 40-1 and 73. Attorney Canning nevertheless was able to negotiate another plea agreement that entailed the petitioner pleading guilty to one count of burglary in the third degree in violation of General Statutes §53a-103 as well as the failure to appear count. Id., at 78-9. The potential maximum exposure the petitioner faced on all counts, had he not reached an agreement with the state, was approximately two hundred years. Id., at 71. The plea agreement ultimately resulted in the petitioner being sentenced on September 30, 1991, to five years to serve on the burglary count and two years to serve consecutively on the failure to appear count, for a total effective sentence of seven years to serve. Am. Ret., Ex. 1.
In 1994, the petitioner filed his first habeas corpus petition challenging the failure to appear conviction.[1] Tr. (11/1/2001), at 5; see also Pet'r Ex. E. A special public defender, Attorney David A. CT Page 3334 Dee, was appointed to represent the petitioner in the first petition. However, that habeas corpus petition was withdrawn on September 16, 1994. Pet'r Ex. F. The withdrawal form was signed by both the petitioner and Attorney Dee. Tr. (11/21/2001), at 10. On November 7, 1994, Attorney Dee filed a Motion to Withdraw with Prejudice, which indicated that it was "imperative that this matter be withdrawn with prejudice for the records of the Public Defender's Office." Id., at 9; see also Pet'r Ex. F. Attorney Dee did not discuss the Motion to Withdraw with Prejudice with the petitioner. Tr. (11/21/2001), at 9. The motion was granted (Sferrazza, J.) on November 7, 1994. Pet'r Ex. F.
As already indicated, the petitioner first alleges that trial counsel was ineffective for allowing the petitioner to plead guilty to a charge of failure to appear in the first degree when the petitioner did not commit that crime. Because the petitioner was incarcerated in Massachusetts at the time he was scheduled to appear on November 26, 1990, he "did not `willfully fail to appear'." Second Am. Pet., at 2. "Trial counsel did not explain to the petitioner that the failure to appear had to be intentional or willful. Had the petitioner known that the state had to show willfulness on his part, the petitioner would not have plead guilty but rather would have proceeded to trial." Pet'r Br., at 4.
At the habeas trial the petitioner offered conflicting testimony regarding his intent to be in Connecticut on October 18th. When first questioned about returning for the sentencing, the petitioner stated that he was drunk and high and could not say what his intentions were. Tr. (11/1/2001), at 35. On further questioning, however, the petitioner testified that it was his intent to come back to Connecticut for the sentencing. Id., at 37. Additional testimony proffered by the petitioner was that even though the sentencing court canvassed the petitioner at the time he entered his guilty plea, neither the sentencing court nor Attorney Canning explained the charge of failure to appear to him. Id., at 44-5. On cross examination the petitioner also testified that he probably would not have taken the plea bargain and would have proceeded to trial on all counts in all files had he known that the failure to appear had to be willful. Id., at 49-50. The petitioner's testimony, however, is starkly contradicted by his former counsel's testimony.
Attorney Canning testified that he knew from the state's file that the petitioner was incarcerated in Massachusetts on November 26, 1990, that he knew the elements of the crime of failure to appear, and that he believed that he explained the elements of failure to appear to the petitioner.Id., at 59-60. Additionally, former trial counsel noted that he "certainly discussed what the failure to appear [would] do to [the petitioner]." Id., at 91. Attorney Canning also stated that he did not advise his client that he might have a defense to the failure to appear CT Page 3335 charge based on that he could not willfully fail to appear as a result of being incarcerated in Massachusetts. Id., at 60. This advice was not provided because Attorney Canning had come across a statement from a female witness in the state's file, said statement alleging that the petitioner "had made certain comments about his leaving the state of Connecticut, and the purpose of it and where he was going." Id., at 62.
Attorney Canning additionally testified that the "young woman's statement . . . [included a claim] that she heard [the petitioner and his friend] discussing the fact that [the petitioner] was due in court on the 18th [of October] for sentencing, and he wanted to go to Canada to avoid that sentence. As a result she said they drove through the states of Connecticut, Rhode Island, and Massachusetts, and ultimately committed a home burglary in the state of Massachusetts to raise money to leave the country." Id., at 64-5. Attorney Canning concluded that the statement supported a conclusion that the petitioner had attempted to flee Connecticut's jurisdiction and that such flight would negate the critical element of failure to appear which the state had to prove, namely that someone conveyed the information to the petitioner that he must show up on November 26, 1990. Id., at 65-6. Lastly, Attorney Canning testified that he discussed the woman's statement with the petitioner, who agreed that the allegations in the statement were substantially correct and indicated that he had made the statement that the woman overheard. Id., at 79-80.
Based on the foregoing, particularly in view of such testimony by the petitioner that both the sentencing court and his former counsel did not explain the failure to appear charge to him, this Court finds the petitioner's testimony not credible and Attorney Canning's testimony to be credible. This Court also finds that Attorney Canning's representation to have been anything but deficient. Attorney Canning was able to negotiate a very good plea agreement and ultimate outcome for the petitioner, one that disposed of many counts and resulted in a relatively short sentence on two counts, one of which was the additional offense of failure to appear at the sentencing for the original offenses. Attorney Canning's representation was very effective.
As to the petitioner's claim that he did not commit the crime of failure to appear in the first degree because he was incarcerated in Massachusetts and did not have notice of the November 26, 1990 sentencing, a review of cases involving failure to appear convictions leads this Court to the conclusion that this claim has no merit. "Pursuant to § 53a-172, to support a conviction for failure to appear, the state must prove beyond a reasonable doubt either that the defendant received and deliberately ignored a notice to appear or that he intentionally embarked on a course of conduct designed to prevent him CT Page 3336 from receiving such notice." (Internal quotation marks omitted.) Statev. Martino, 61 Conn. App. 118, 123-4, 762 A.2d 6 (2000). In Martino, the Appellate Court held that proof of notice regarding a rescheduled hearing, which the defendant failed to appear at, could be inferred from evidence of his actions, behavior and statements. Id., at 124-5.
In State v. Candito, 4 Conn. App. 154, 157, 493 A.2d 250 (1985), the defendant had unambiguous notice of a scheduled sentencing, failed to appear and was later apprehended in another state. The Appellate Court held that the fact finder "could reasonably infer that the defendant knew of his responsibility to appear in court . . ., that he expected to receive a substantial sentence, and that he fled the state rather than face almost certain incarceration." Id., at 157-8. Moreover, the fact finder could reasonably conclude that the defendant had deliberately ignored the notice to appear. Id., at 158.
An additional aspect of failure to appear convictions that is significant is whether a defendant makes any effort to contact the court so as to explain the absence. In State v. Cassidy, 236 Conn. 112, 136-7,672 A.2d 899 (1996), the defendant failed to contact "court personnel to explain his absence or to seek a further continuance of his case . . . [or] report his inability to appear on that day." See also State v.Laws, 39 Conn. App. 816, 819-20, 668 A.2d 392 (1995), cert. denied,236 Conn. 914, 673 A.2d 1143 (1996), and State v. Turmon,34 Conn. App. 191, 195-6, 641 A.2d 138, cert. denied, 229 Conn. 922,642 A.2d 1216 (1994). Such failure to contact has been critical to sustaining the fact-finder's conclusion that a defendant deliberately failed to appear. State v. Cassidy, supra, 236 Conn. 139; State v. Laws, supra, 39 Conn. App. 820; State v. Turmon, supra, 34 Conn. App. 198.
Lastly, in State v. Hoskins, 35 Conn. Sup. 587, 597, 401 A.2d 65
(1978), the Appellate Session of the Superior Court held that "[f]rom the appearance of the defendant's attorney on the date the case was assigned for trial and the defendant's failure to appear on the trial date coupled with his departure for parts unknown, it was reasonable for the court to conclude that the defendant was guilty of a wilful failure to appear in violation of the statute. A person released on bond or promise to appearis not free to become evanescent with impunity." (Emphasis added.)
In the instant case, the petitioner had notice of the scheduled sentencing on October 18, 1990 and intentionally embarked two days prior to the sentencing on a course of conduct outside the state of Connecticut that resulted in his incarceration and prevented him from receiving notice of the November 26, 1990 continuance date. The record is entirely void of any indication that the petitioner attempted to contact either Attorney Washton or the court regarding his inability to be present on CT Page 3337 both October 18, 1990 and November 26, 1990. The petitioner could not recall whether he did or did not call Attorney Washton on October 17, 1990, though he did call his sister in Connecticut right before the October 18, 1990 court date. Tr. (11/1/2001), at 38. The collect phone call made to his sister was made so that the petitioner could request that she do something on his behalf regarding the bond, which the sister had posted, and prevent the bond from being called. Id., at 39. The petitioner's sister did not forfeit the bond as a result of the petitioner failing to appear on October 18, 1990. Id. The petitioner's testimony that he called Attorney Washton's office several days after October 18, 1990, a call that was placed through a counselor at the Dedham, Massachusetts jail to find out what happened on that date, also clearly demonstrates that the petitioner had the ability and opportunity to make calls. Id., at 28.
Based on all the foregoing, this Court finds that Attorney Canning, in counseling the petitioner to plead guilty to a charge of failure to appear, a charge for which there was a factual basis, rendered effective assistance of counsel. The petitioner has failed to show both that Attorney Canning's performance was somehow deficient and that he would not have pleaded guilty, that he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial. As to the claim that prior habeas counsel was ineffective, a claim that is derivative of the first claim, this Court finds that prior habeas counsel could not have rendered ineffective assistance of counsel in a matter in which the petitioner has failed to show that the claim in the prior habeas had any merit. Additionally, this Court notes that even if a habeas petition is dismissed or withdrawn with prejudice, a subsequent petition raising the same claim, but stating new facts or proffering new evidence not reasonably available at the time of prior petition, would nevertheless warrant issuing the writ. Practice Book §§ 23-24 and23-29 (3).
For all the foregoing reasons, the petitioner has failed to prove the claims raised in the Second Amended Petition. The Court, therefore, denies the petition seeking habeas corpus relief.
EDWARD C. GRAZIANI, JUDGE